KAREN R. BAKER, Associate Justice I iThis appealstems'from the'termination of parental rights of appellant, Chris Taff-ner, and separate appellant, Anita Taffner, of their five adopted.children.,. N.T., A.T., B.T., K.T., and J.T. Appellee, the-Arkansas Department of Human Services (DHS), initiated dependency neglect proceedings and ultimately termination of parental rights proceedings. Chris and Anita Taffner are the adoptive-parents of five children who came to their home through foster-care services and were adopted in 2009 and 2011 respectively. On January 2, 2015, DHS removed the children from the home as a result of allegations that Chris had sexually abused one of his children. Also on January 2, 2015, Chris was- arrested for sexual abuse. On January 5, -2015, DHS filed an emergency custody and dependency-neglect petition. On January 7, 2015, the circuit court entered a probable-cause order and declared both Chris and Anita indigent and appointed separate counsel for each. In the petition and supporting affidavit, DHS asserted that the children were dependent-neglected Ras a result of abandonment, abuse, sexual abuse, sexual exploitations, neglect or parental unfitness. Further, the supporting affidavit stated that DHS had received credible statements during an ongoing sexual-abuse investigation from one of the children that their father was the alleged offender and the children were in imminent danger if they remained in the home. Additionally, the affidavit stated that the investigation was initiated after a report was received at the child-abuse hotline that the adoptive father, Chris, was alleged to have sexually abused one of the children. Further, the affidavit stated that the adoptive mother, Anita, stated that she did not believe the children’s statement and was “100% supportive of her husband,” and if it came down to choosing between her husband and her children, she would choose “[her] husband of course.” On February 18, 2015, the circuit court conducted an adjudication hearing. At the hearing, the parties agreed to the following stipulation of facts: The parties agree to a finding of dependency-neglect as to B.T., A.T., K.T., N.T., and J.T., based upon the following stipulated facts: that the five children were previously in foster care and were adopted by Chris and Anita Taffner; that father, Chris Taffner, was arrested for rape and sexual assault in the second degree, three counts, in Washington County Criminal Case Number CR 2015-16-6; B.T. is named as one alleged victim in those proceedings; that the Arkansas State Police Crimes Against Children Division has found true against Chris Taffner with B.T. as victim for sexual contact, oral sex, and sexual penetration. That the criminal charges are pending and are currently set for trial on April 3rd, 2015. That mother, Anita Taffner, continues to live with Chris Taffner as his wife. Mother has articulated to DHS and to CACD that she believes and supports her husband, and that based upon the foregoing, the children cannot return to either parent at this time. At the hearing, DHS brought witnesses to the adjudication hearing to prove its allegations, and following the circuit court’s acceptance of the stipulation, requested that the witnesses be released. However, the circuit court retained the witnesses to take testimony 1 sto establish clear and convincing proof of aggravating circumstances. At the conclusion of the hearing, the circuit court announced its finding that Chris had sexually abused the children and that there was clear and convincing evidence of aggravated circumstances. Neither Chris nor Anita objected to this finding or appealed it. Also on February 18, 2015, the circuit court entered an order finding by clear and convincing evidence that the five children were dependent-neglected:. . [A]fter considering evidence presented at this hearing, that these additional allegations ... are true and correct. Specifically, ... based on uncontroverted credible testimony ... the court finds: B.T. and K.T. were subjected to AGGRAVATED CIRCUMSTANCES due to sexual abuse: B.T. and K.T. were sexually abused by Chris Taffner. The court makes this finding by clear and convincing evidence. Ms. Taffner, Mother, is not protective of the children.[1] |40n May 19, 2015, DHS filed a petition to terminate Chris and Anita’s parental rights, citing as grounds the circuit court’s finding that Chris had abused B.T. and K.T., that Anita had not protected the children, that she still remained in the home, and that she had refused to submit to a psychological evaluation. Anita responded that the adjudication hearing was not a “meaningful” hearing, it was in violation of her due-process rights, and she had not been afforded effective assistance of counsel. Anita also filed a motion requesting that the circuit judge recuse from the case because “this Court’s conduct has raised a reasonable apprehension of bias.” The circuit court denied this motion. On June 29, 2015, Chris filed a pro se “Motion for a New Lawyer” in which he requested that the circuit court appoint him new counsel. In his motion, Chris argued that his counsel had not adequately represented him in the adjudication hearing, asserting that counsel was not prepared for the hearing, that counsel had not called witnesses or made any attempts to investigate the claims against him, and that counsel had not informed Chris of his right to appeal the order. On June 30, 2015, his appointed counsel filed a motion to withdraw as counsel, stating that she and Chris “have a significant difference in strategy and tactics to defend this matter.”. The circuit court granted counsel’s motion to withdraw as counsel and appointed new counsel but did not make findings on Chris’s ineffeetivejassistance-of-eounsel6 allegations. On August 14, 2015, the circuit court held a hearing on the petition to terminate parental rights. Prior to the hearing, Anita filed a “Motion for a Finding that the Adjudication Hearing was not a Meaningful Hearing” in which she again contended that the adjudication hearing was not meaningful, it violated her due-process rights, and her counsel was ineffective. The attorney ad litem and DHS both objected to Anita’s motion, -and the circuit court stated that they would each have ten days based on the Rules of Civil Procedure to respond to the motion and would not rule on the motion at that the hearing. Following the hearing, the circuit court entered an order terminating Chris and Anita’s parental rights. Additionally, the court denied Anita’s motion on the adjudication hearing, finding that “the adjudication hearing was, in fact, a meaningful hearing, as both defendants were represented by counsel and had full opportunity for cross-examination of witnesses — an opportunity of which they did avail themselves.” The court further recognized that the adjudication order had not been appealed. Chris and Anita both filed timely notices of appeal from the termination order. From the termination order, Chris and Anita appealed to the court of appeals. On March 17, 2016, we accepted certification of this case. On appeal, Chris presents one issue: Chris was denied his right to effective assistance of counsel when-.his appointed counsel at the adjudication hearing, and the ineffectiveness of his appointed counsel, tainted the remainder of the dependency-neglect proceedings such that the termination of his parental rights was a foregone conclusion. On appeal, Anita presents three issues: (1) Anita was | ¡¡denied effective assistance of counsel; (2) the circuit court erred when it improperly-refused to recuse itself; and (3) the circuit court erred when it deprived Anita of her Sixth Amendment right to confront witnesses. . I. Standard of Review ' In cases where the issue is one of termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. Trout v. Ark. Dep’t of Human Servs., 359 Ark. 283, 197 S.W.3d 486 (2004); Ullom v. Ark Dep’t of Human Sews., 340 Ark. 615, 12 S.W.3d 204 (2000). Termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. Id. Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. Crawford v. Ark. Dep’t of Human Servs., 330 Ark. 152, 951 S.W.2d 310 (1997). Parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children. J.T. v. Ark. Dep’t of Human Servs., 329 Ark. 243, 947 S.W.2d 761 (1997). On appellate review, this court gives a high degree of deference to the trial courtj which is in a far superior position to observe the parties before it. Dinkins v. Ark. Dep’t of Human Sews., 344 Ark. 207, 40 S.W.3d 286 (2001). Further, pursuant to Ark. Code Ann. § 9-27-341(b)(3) (Repl.2015), an order terminating parental rights must be based upon clear and convincing evidence. See also Larseheid v. Ark. Dep’t of Human Sews,, 343 Ark. 580, 36 S.W.3d 308 (2001). Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. Baker v. Ark. Dep’t of Human Sews., 340 Ark. 42, 8 S.W.3d 499 |7(2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Dinkins, 344 Ark. 207, 40 S.W.3d 286. In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. Camarillo-Cox v. Ark. Dep’t of Human Servs., 360 Ark. 340, 351-52, 201 S.W.3d 391, 398-99 (2005). II. Points on Appeal A. Ineffective Assistance of Counsel Because Anita and Chris both present claims of ineffective assistance of counsel, we will address the claims together. Prior to the termination hearing, Anita and Chris both asserted they had received ineffective assistance of counsel at the adjudication hearing. In her August 13, 2015 motion, Anita contended that, among other things, she did not have a meaningful hearing because she was not provided time to conduct discovery, received ineffective assistance of counsel, including counsel’s failure to inform her of her right to appeal the adjudication order, and counsel’s failure .to object to hearsay statements on which the circuit court erroneously based its ruling upon. Likewise, in his June 29, 2015 “pro se motion for a new lawyer,” Chris contended his counsel was ineffective alleging that she did not, adequately represent his interests, did not investigate, did not prepare, and did not inform him of his rights to appeal. At the terminatiqn hearing, Chris again asserted that he received ineffective assistance of counsel because his counsel did not inform him of his right to appeal the adjudication order. | sIn her oral argument to the circuit court, Anita asserted that she had received ineffective assistance of counsel, “the adjudication hearing was not a meaningful hearing, and was not advised of the right to appeal.” Chris joined in this argument asserting that he did not receive a meaningful hearing and received ineffective assistance of counsel. At the August 14, 2015 hearing,, the circuit court stated in its ruling from the bench Now, we weren’t going to get into this Motion that Mr. Kezhaya filed, Separate Defendant Ms. Taffner’s Motion for a Finding that the Adjudication Hearing was not a Meaningful Hearing, but he brings it up in his closing statements, so I’m going to go ahead and respond to it now. He argues in his closing statement that the adjudication was not a meaningful hearing because the attorney did not do .discovery for his client, Ms. Taffner, that the attorney for Ms. Taff-ner did not make proper objections, that the attorney for Ms. Taffner did not advise Ms. Taffner of her right to appeal. Mr. Taffner, his now attorney Ms. Tosh who’s here today, also joins in those same objections that the adjudica- tion hearing was not a meaningful hearing, and that his attorney at the time, Ms. Betsy Finocchi; was an ineffective attorney for Mr. Taffner and that Mr. Taffner was not advised to his right to appeal by Ms. Finocchi, that he had ineffective counsel. Now, based upon the Adjudication Order from February 18th, 2015, both mother and father had attorneys that had been appointed for them. Both of their attorneys were . present, mom’s attorney at the time, Sarah Williamson, dad’s attorney at the time Betsy Finocchi. There was testimony at that hearing of Detective Bret Hagen, the Washington County Sheriffs • Office detective. Karis Chastain testified, the child abuse center — CACD investigator. And. based upon the testimony, I adjudicated, the children, all five of them, to be dependent-neglected. Both Mr. and Ms. Taffner’s attorney had . full opportunity to cross examine all the witnesses and did so. That hearing went on for a really, really long time. They had right to attorneys. Free attorneys were appointed to them. They had the right for discovery with — that was something they could have done. The attorneys did; make objections throughout that hearing, whether or not Mr. Kezhaya and Ms. Tosh think they were proper objections or not. That’s not for me to decide. Obviously, there’s a transcript. And as far as whether or not their attorneys advised them of then-right to appeal, I don’t know what they talked about in private with their lawyers. I find that the adjudication hearing was a meaningful hearing. Further, in its September 11, 2015, termination order the circuit court stated, The Motion filed by ... Attorney for [Anita] ... requesting that this court | flfind that the adjudication hearing in this case was not a meaningful hearing is denied. The Court finds that the Adjudication hearing, was, in fact, a meaningful hearing and both defendants were represented by counsel and had full opportunity for cross-examination of witnesses — an opportunity of which they did avail themselves. The court further finds that the adjudication order was not appealed. ■ In Jones v. Arkansas Dep’t of Human Services, 361 Ark. 164, 190-91, 205 S.W.3d 778, 794-95 (2005), we declined to address an ineffective-assistance-of-counsel claim in a termination-of-parental-rights proceeding. Nonetheless, the Jones court went on to say, “Because of the similarities in termination proceedings and criminal cases, we adopt the standard for ineffectiveness set out in Strickland.” However, in Jones, the court did not reach the merits of the claim: Notwithstanding our holding today that, as a matter of law, the right to counsel in termination cases includes the right to effective counsel, we must decline to issue any ruling as to whether Appellant’s counsel was ineffective in this case. In short, Appellant failed to raise the issue of [the first attorney’s] ineffectiveness and failed to fully develop the facts and circumstances surrounding her claim. Accordingly, we will not reach the merits of this point on appeal. Jones, 361 Ark. at 190-91, 205 S.W.3d at 794-95. Turning to the issue presented, Chris and Anita assert that they received ineffective assistance of counsel, which ultimately led to the termination of their parental rights. Stated differently, but for counsel’s alleged ineffectiveness, their parental rights would not have been terminated. However, based on the record before us, like Jones, Chris and Anita did not develop their ineffective-assistance-of-counsel claims, present evidence or testimony regarding the ineffectiveness, and failed to fully develop the facts and circumstances surrounding their claim. Regarding counsel’s ineffectiveness, the circuit court specifically stated “That’s not for me to decide” and ruled only on the meaningfulness of the hearing. Further, based on the |inrecord before us, neither parent requested clarification or additional ruling specifically on the ineffectiveness arguments. Pursuant to Rule 60 of the Arkansas Rules of Civil Procedure, the- circuit court may set aside or modify an order within 90 days “to prevent the miscarriage of justice....” However, here, the record demonstrates that neither party pursued relief pursuant to Rule 60. As explained in Jones, we “will not consider a claim of ineffective assistance of counsel as a point on appeal unless the issue was first raised in the trial court and the facts and circumstances surrounding the claim were fully developed in the trial court. See Ratchford v. State, 357 Ark. 27, 159 S.W.3d 304 (2004); McClina v. State, 354 Ark. 384, 123 S.W.3d 883 (2003); Chavis v. State, 328 Ark. 251, 942 S.W.2d 853 (1997).” Jones, 361 Ark. at 191, 205 S.W.3d at 794. “The rationale behind this rule is that an evidentiary hearing and finding as to the competency of appellant’s counsel by the trial court better equips this court on review to examine in detail the sufficiency of the representation.” Kanig v. State, 321 Ark. 515, 515-16, 905 S.W.2d 847, 847 (1995) (internal citations omitted). Accordingly, where the issue of ineffective assistance is raised by a defendant but the trial court does not rule on it, we will not address it on appeal. Dodson v. State, 326 Ark. 637, 934 S.W.2d 198 (1996). In Chavis, 328 Ark. at 253-54, 942 S.W.2d at 854, we reiterated our holding in Dodson: As this court noted in Dodson, the “deemed denied” provision of Rule 4(c) does not apply to appeals from Rule 37 petitions. Although this appeal is from the denial of a posttrial motion for new trial, rather than from the denial of a Rule 37 petition, the “deemed denied" provision of Rule 4(c) is similarly inapplicable to this case. Id. The reasons for the necessity of an actual ruling and fully developed facts are the same in both instances, as this court explained in Dodson: |nSuch a deemed ruling necessarily precludes any consideration by the trial court of the relevant facts pertain- ■ ing to the claim. As -the trial court is in the best position to evaluate trial counsel’s performance and competency, an order reciting its findings is necessary to enable us to conduct a meaningful review of the claim. Id. at 644, 934 S.W.2d at 202. In the case at hand, Appellant has failed to present us with a sufficient order from which to consider his allegation- of trial counsel’s ineffectiveness. Thus, ' based upon our holding in Dodson, we affirm as to this point. Here, as in Chavis and Dodson, the circuit court did not have a. hearing on the ineffectiveness claim or make any specific rulings regarding counsel’s effectiveness. Therefore, there is nothing for this court to review with regard to the ineffectiveness claims. Like Dodson, the circuit court did not rule on the issue of ineffective assistance of counsel,, and we recognized this requirement in termination appeals in- Jones. Accordingly, we do not reach Chris and Anita’s ineffectiveness-assistance-of-counsel claim because the circuit court did not rule on it.[2] | mill. Anita’s Remaining Points on Appeal A. Recusal For her second point on appeal, Anita contends that the circuit court abused its discretion when it denied Anita’s motion for judicial recusal. Anita asserts that the “trial court systematically interfei’ed with [Anita’s] ability to present a defense to the allegations below and communicated bias by insulting [Anita’s] counsel in open court.” Anita .points to four instances of error by the circuit court: (1) The circuit court’s ruling that her refusal ..to undergo court-ordered psychological testing and counseling by claiming silence under the 5th amendment was' relevant in deciding to terminate her parental rights; (2) Prohibiting her from introducing evidence at the termination hearing pertaining to the allegations that Chris had sexually abused the chil-. dren; (3) Overruling her motion for directed verdict on adoptability; and (4) Unfairly controlling the proceedings by objecting on behalf of the State, requiring Appellant to state objections with specificity, overruling motions for 54(b) certificates and summarily ruling on the issue of ineffective assistance of counsel. Regarding our standard of review in recusal matters, in Manila School Dist. No. 15 v. Wagner, 357 Ark. 20, 25, 159 S.W.3d 285, 290 (2004), we explained that a trial judge has a 114duty not to recuse from a case where no prejudice exists. Thus, if there-is no valid reason for the judge to disqualify himself or herself, he or she has a duty to remain on a case. Anita contends that the circuit court indicated bias by “systematically interfering with Appellant’s ability to present her case” and by insulting appellant’s attorney in open court. Anita further contends that the rulings indicate bias by the circuit court and requests that we “find that the court below abused [its] discretion in refusing to recuse, and reverse and remand for proceedings with a different judge.” Canon 3E(1) of the Code of Judicial Conduct, requires a judge to re-cuse'from cases in which his or her impartiality might reasonably "bé questioned. Additionally, there is a presumption of impartiality, and the party seeking disqualification bears the burden of proving otherwise. Turner v. State, 325 Ark. 237, 926 S.W.2d 843 (1996). The decision to recuse is within the trial court’s discretion, and it will not be reversed absent abuse. Reel v. State, 318 Ark. 565, 886 S.W.2d 615 (1994). An abuse of discretion can be proved by á showing of bias or prejudice on the part of the trial court. Noland v. Noland 326 Ark. 617, 932 S.W.2d 341 (1996). “Absent some objective demonstration by the appellant of the trial judge’s prejudice, it is the communication of bias by the trial judge which will cause us to reverse his or her refusal to recuse.” Irvin v. State, 345 Ark. 541, 550, 49 S.W.3d 635, 641 (citing Noland, 326 Ark. 617, 932 S.W.2d 341). The mere fact of adverse rulings is not enough to demonstrate bias. Gates v. State, 338 Ark. 530, 2 S.W.3d 40 (1999). Accordingly, we must determine whether Anita demonstrated evidence of bias sufficient to warrant recusal of the circuit court judge. In this case, Anita has not presented | ^-evidence of bias on the part of the judge. Instead, Anita has simply made bare allegations. In fact, the only comment Anita can point to that suggests any bias on the part of the judge is that, following a witness’s reference to the— male — attorney as “ma’am,” the judge commented, “That’s all right. He’s been called worse than that.” This remark does not demonstrate a personal prejudice against Anita or bias by the trial court. See Daniels v. State, 2013 Ark. 208, at 2. Because adverse rulings alone are not sufficient to show bias, Anita’s argument must fail. See Brown v. State, 2012 Ark. 399, 424 S.W.3d 288. Accordingly, based on our review of the record and the discussion above, we affirm the circuit court’s denial of Anita’s motion for recusal. IV. Confrontation of Witnesses For her final point on appeal, Anita asserts that she was deprived of her Sixth Amendment right to confront witnesses because the circuit court allowed witnesses to testify as to the hearsay statements of B.T. and K.T. regarding the allegations of sexual abuse. Specifically, Anita asserts that it was clearly erroneous for the circuit court to deny Anita her right to confront the children on these allegations — “by doing this, the trial court improperly outsourced her duty to render a fair and independent judgment onto criminal investigators.” The Sixth Amendment provides: In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with’the witnesses against him. The United State Supreme Court has held that “the sixth amendment relates to a prosecution of an accused person which is technically criminal in its nature.” United States v. Zucker, 161 U.S. 475, 481, 16 S.Ct. 641, 40 L.Ed. 777 (1896). | ^Accordingly, the Sixth Amendment guarantee applies to criminal prosecutions. ’ Anita requests that this court expand the rule to apply in parental rights termination cases. We decline Anita’s invitation to expand the Sixth Amendment right of confrontation to termination cases and affirm the circuit court on this point. Affirmed. - Danielson and Hart, JJ., dissent. . With regard to aggravating circumstances, both parents assert that the circuit court sua sponte raised the aggravating circumstances in this case. However, the petition and supporting affidavit both specifically provided the sexual-abuse allegations. Ark.Code Ann. § 9-27-303 defines sexual abuse. Further, Ark, Code Ann. § 9-27-311 provides in pertinent part, as follows: (e)(1) The petition shall set forth the following in plain and concise words: (A) The facts that, if proven, would bring the family or juvenile within the court's jurisdiction; (B) The section of this subchapter upon which jurisdiction for the petition is based; (C) The relief requested by the petitioner; and (D) If a petition for delinquency proceedings, any and all sections of the criminal laws allegedly violated. (2)(A) The petition shall be supported by an affidavit of facts. (B) A supporting affidavit of facts shall not be required for delinquency, paternity, or termination of parental rights petitions. (C) The supporting affidavit of facts shall include known information regarding the fitness of the noncustodial parent to be considered for custody, placement, or visitation with the juvenile. (D) If the petition for dependency-neglect is filed by the department, the supporting affidavit of facts shall include a list of all contact the department has had with the family before the filing of the petition, including without limitation hotline calls accepted for maltreatment, investigations, and open cases. Here, the record supports that the petition complied with the statute. . The dissenting justices separately state that the claims were developed and ruled upon. Justice Danielson’s dissent states: I would hold that the ineffective-assistance-of-counsel claims were developed and ruled upon and that we can reach them on appeal. This statement is not supported by the record. In fact, the record unequivocally states that a ruling was not made when the circuit court stated: That’s not for me to decide. Yet, both dissents claim there is a ruling on the issue. This court must have a ruling to perform its review. "When a circuit court does not provide a ruling on an issue, it is an appellant’s responsibility to obtain a ruling to preserve the issue for appeal. Neal v. Sparks Reg’l Med. Ctr., 2012 Ark, 328, 422 S.W.3d 116.” Meador v. Total Compliance Consultants, Inc., 2013 Ark. 22, 5, 425 S.W.3d 718, 721 (2013). Still glaringly absent from the dissenting opinions is the "ruling” that this court must analyze and review. • On countless occasions we have explained: It is well settled that this court will not consider inefféctive assistance as a point on direct appeal unless that issue has been considered by the trial court. Anderson v. State, 353 Ark. 384, 108 S.W.3d 592 (2003); Willis v. State, 334 Ark. 412, 977 S.W.2d 890 (1998); Slocum v. State, 325 Ark. 38, 924 S.W.2d 237 (1996); Edwards v. State, 321 Ark. 610, 906 S.W.2d 310 (1995); Sum-lin v. State, 319 Ark. 312, 891 S.W.2d 375 (1995); Missildine v. State, 314 Ark. 500, 863 S.W.2d 813 (1993). Additionally, the facts- surrounding the claim must- be fully developed, either during the trial or during hearings conducted by the trial court. Willis, supra; Dodson v. State, 326 Ark. 637, 934 S.W.2d 198 (1996). The reason for this rule is that an evidentiary hearing and finding as to the competency of appellant’s counsel by the trial court better equips the appellate court on review to examine in detail the sufficiency of the representation. Willis, supra; Reed v. State, 323 Ark. 28, 912 S.W.2d 929 (1996). The trial court is ‘ in a better position to assess the quality of - legal representation than we áre on appeal. Dodson, supra. Ratchford v. State, 357 Ark. 27, 31, 159 S‘.W.3d 304, 306 (2004). Further, to compound the flaw in the dissenting opinions, even if the claims were ruled upon, both dissenting opinions make an unprecedented leap and conclude that Anita and Chris both satisfied the Strickland standard and received ineffective assistance of counsel. Justice’s Danielson’s dissent states: Applying the first prong of the Strickland standard to this case, I would hold that both Chris and Anita. have demonstrated deficient performance on the part of their attorneys by their failure to advise.them of their right to appeal the adjudication order. Because Anita and Chris.were not advised of their right to appeal, their attorneys’ performance was deficient; therefore, the first prong of the Strickland standard has been met. . Turning, to the second prong of the Strickland standard, I would hold that Anita’s and Chris’s counsels’ failure to advise them of, their right to appeal the adjudication order prejudiced them to the extent that each was deprived of a fair trial. Because Chris and Anita were not advised of their rights to appeal the adjudication order, they are' now precluded from asserting error, which has clearly prejudiced them to the extent that they did not receive a fair trial.' However, despite the findings of fact contained in the dissenting opinions, other than Anita and Chris’s allegations in their brief that they were not informed of their right to appeal the adjudication hearing, the 675 pages of the record do not' contain a single word to support the finding that Anita and Chris were not advised of their right to appeal the adjudication hearing. A careful review of the record demonstrates that the record is absolutely devoid of any evidence to support the Taffners’ bare allegations. In fact, the circuit court stated,''.‘as whether or not their ' attorneys advised them of their right to appeal, I don’t know what they talked about in private with their lawyers.” Indeed, there was no way the circuit court could ■ have known, because absolutely ho evidence was presented concerning the issue. Accordingly, without evidence from the record before us, the dissenting justices have simply adopted Chris's brief and created facts out of whole cloth to support théir contentions.-